Morris Canal and Banking Co. v. Van Vorst.

---

MORRIS CANAL AND BANKING CO. v. VAN VORST, ADMINIS- TRATRIX.

1. When a subject comprehends multiplicity of matter, in order to avoid prolixity of pleading, the law allows of general pleading: as in a cashier's bond conditioned for his faithful service, &c., it is sufficient to assign as a breach that the cashier had received divers sums of money and valuable securities for money for which he had not accounted, without specifying the securities or stating from whom they were received.

2. Greater certainty is not required in assigning breaches upon such bond against the administratrix of the surety than if the suit had been brought against the surety himself.

3. It is not necessary in such assignment of breaches specially to aver that notice of the default had been given to the surety.

4. The inducement to a special traverse must set out material facts repugnant to the allegation traversed, so that the traverse may be an inference from the inducement.

5. A traverse may be taken upon matter which, though not expressly alleged, is necessarily implied.

6. To a plea, in an action on a cashier's bond, that the cashier had made and executed his promissory note, payable, &c., in full satisfaction and discharge of all moneys, &c., unaccounted for, which said note the company had accepted

in full satisfaction, &c., *held* that a replication which, after a special inducement, traversed the making and executing the said note in satisfaction, and not the acceptance, was good.

On demurrer to replications.

This was an action of debt on the bond of a cashier of the company.

The condition, as set out upon oyer, is as follows : " that whereas the said A. B. is, and is to be retained and employed by the said Morris Canal and Banking Company : now if the said A. B. shall well and faithfully serve the said Morris Canal and Banking Company, and if the said H. J. M. and J. V. V., or either of them, or either of their heirs, executors, or administrators, shall well, truly, and faithfully, from time to time and at all times, indemnify and save harmless the said Morris Canal and Banking Company from any loss, damage, or injury, by reason of any malfeasance, misfeasance, wilful omission, neglect, or wrongful act or acts of the said A. B. while he is retained and employed by the said Morris Canal and Banking Company, or under their authority, then this obligation to be void, otherwise to remain in full force and virtue."

The defendant (after having oyer and setting out the bond and condition) pleaded several pleas. The second plea was *actio non*, &c., because she saith that the said A. B. the principal named in the said writing obligatory and in the condition thereof, did well and faithfully serve the said Morris Canal and Banking Company, according to the tenor and effect, true intent and meaning of the said condition of the said writing obligatory. And that the said Morris Canal and Banking Company did not, at any time or times while he was retained and employed by the said Morris Canal and Banking Company, suffer any loss, damage, or injury by reason of any malfeasance, misfeasance, wilful neglect, omission, or wrongful act or acts of the said A. B., and this she is ready to verify ; wherefore, &c.

*Replication, precludi non*, because, &c., " that from the day of the date of the said writing obligatory, to wit, the 5th December, 1826, until about the 3d of September, 1836, to wit,

at Jersey City, in the county formerly of Bergen, now of the county of Hudson, the said A. B., in the said condition of the said writing obligatory mentioned, was and during the said time continued to be retained and employed by the said Morris Canal and Banking Company, as mentioned and contemplated in the said writing obligatory, as the cashier in the management and conduct of their banking and other financial operations; and that, during the said time the said A. B. was so retained and employed, at divers days and times, to wit, at Jersey City aforesaid, the said A. B. had and received divers large sums of money and valuable securities for money, for and on account of the said Morris Canal and Banking Company, amounting in the whole to the sum of $113,537; which, contrary to the intent and meaning of the said condition, and contrary to his duty in that behalf, he, the said A. B. aforesaid, to wit, on the first of September, 1836, at Jersey City aforesaid, applied to his own use, and never accounted for or paid the same, or any part thereof, to the said Morris Canal and Banking Company, but to do so made default, to wit, at Jersey City aforesaid. And the said A. B., although often requested so to do, hath never since paid or accounted for the whole of the said sum of $113,537, but a large portion thereof, to wit, the sum of $33,537, still remains unaccounted for and unpaid to the said Morris Canal and Banking Company, to wit, at Jersey City aforesaid, whereby the said Morris Canal and Banking Company has lost and been damaged the said amount of money last mentioned, by reason of the malfeasance, misfeasance, wilful omission, neglect, and wrongful acts of the said A. B. in the premises, to wit, at Jersey City, aforesaid. And the said Morris Canal and Banking Company says that the said H. J. M. and J. V. V. or either of them, or their heirs, executors, or administrators, of them or of either of them, or the defendant, as administratrix of the said J. V. V. or the said A. B., have not, nor have any, nor hath either of them, at any time indemnified or saved harmless the said Morris Canal and Banking Company from the said loss and damage so sustained as aforesaid by reason of the misfeasance, wilful omission, neglect, and wrongful acts of the said A. B., or any

part thereof. Nor have they, or any of them, nor hath either of them, at any time made good or paid to the said the Morris Canal and Banking Company the said loss and damage, or any part thereof. And so the said the Morris Canal and Banking Company says that the said A. B. did not well and faithfully serve the said the Morris Canal and Banking Company according to the true intent and meaning of the said condition of the said writing obligatory ; but that the said Morris Canal and Banking Company did, while the said A. B. was so retained and employed by the said company as aforesaid, suffer great loss, damage, and injury by reason of the said malfeasance, wilful omission, neglect, or wrongful acts of the said A. B. in the premises, contrary to the force and effect of the said condition of the said writing obligatory, to wit, at Jersey City aforesaid. *Concluding with a verification.*

To this replication the defendant demurred, and assigned the following causes of demurrer, *viz :*

That the said plaintiff has not in any way set out and described what portion of the said sum of $113,537, in the said replication mentioned, consisted of money and what portion of valuable securities. Nor what portion of the sum of $33,537, in the said replication mentioned, consisted of money and what portion of valuable securities. And also, that the said plaintiff has not in the said replication set forth and specified of what the securities, which in the said replication are called valuable securities, were composed ; or whether they, or any of them, were securities for the payment of money or the delivery of property, or what else ; and if for the payment of money, whether they were notes, bills, bonds, certificates of stock, or other securities. And also, that the said plaintiff has not set forth in the said replication to whom the said securities, or any of them, belonged ; or to whom or by whom made or given, or in any manner or way described the same, so as to give this defendant an opportunity of answering the said breach and of showing that the said A. B. did not apply the same to his own use, and that the said plaintiff has not been damnified, as in the said replication is alleged. And also, that the said plaintiff has not in any way set forth in what way

Morris Canal and Banking Co. v. Van Vorst.

or manner the company became and was damnified by any malfeasance, wilful omission, neglect, and wrongful acts of the said A. B. in the said premises.   And also, that the said plaintiff, in the said replication, has not alleged that the said plaintiff ever gave notice of the said misapplication, malfeasance, wilful omission, neglect, and wrongful acts of the said J. V. V., in his lifetime, or to this defendant, after his death, and requested payment of the said last mentioned sum of money, or any part thereof.   And also that this said replication is in other respects uncertain, informal, and insufficient, &c.

The fourth plea was *actio non*, because, she says, that the said A. B., who is the principal in the said writing obligatory, heretofore and after the giving of the said bond and before the commencement of this suit, to wit, on the — day of October, in the year of our Lord 1836, at, &c., made and executed his certain note in writing, commonly called a promissory note, for the sum of \$28,229.47, bearing date the same day and year aforesaid, payable to the said Morris Canal and Banking Company five years after date, in full satisfaction and discharge of all and any money or securities unpaid or unaccounted for by him, the said A. B., to the said plaintiffs, while he, the said A. B., was retained and employed by the said plaintiff or under its authority, and in full of all damages or loss sustained by the said company by reason of any breach of the condition of the said bond or writing obligatory ; which said promissory note, so made and delivered as aforesaid, and so payable as aforesaid, the said Morris Canal and Banking Company accepted and received of and from the said A. B. in full satisfaction and discharge of all and every money or securities unpaid or unaccounted for by the said A. B. the said Morris Canal and Banking Company, while he, the said A. B., was retained and employed by the said plaintiff or under its authority, and in full of all damages or loss sustained by the said company by reason of any breach of the condition of the said bond. And this she is ready to verify : wherefore, &c.

Replication, *precludi non*, because, &c., that from and after the time of the execution and delivery of the said bond in the said declaration mentioned, to wit, from the 5th day of De-

cember, 1826, until the 3d September, 1836, to wit, at Jersey City, in the county of Bergen, now in the county of Hudson, the said A. B., in the said plea mentioned, was retained and employed by the plaintiff in its service as its cashier, and as such cashier during the time aforesaid, and there had the custody and charge of very large amounts of money and securities for money of the plaintiff, being then and there, by the plaintiff, confidentially intrusted therewith, as such cashier as aforesaid ; and the plaintiff avers that after the death of the said J. V. V., to wit, on the day and year last aforesaid, the said A. B. was by the plaintiff found to be, and then and there was a defaulter in his said office as cashier to a large amount, exceeding the sum of $100,000, to wit, to the sum of $121,-229.47, he, the said A. B., having during the time aforesaid, while acting in the capacity of the plaintiff's cashier as aforesaid, abstracted and converted to his own use divers large sums of money and securities for money of the plaintiff, so intrusted with him as its cashier as aforesaid, exceeding in the whole the said sum of $100,000, to wit, amounting to the said sum of $121,229.47, to wit, at Jersey City aforesaid ; whereupon the said A. B., on the day and year last aforesaid, at Jersey City aforesaid, ceased to be retained and employed by the plaintiff in its service aforesaid. And the plaintiff avers that afterwards, to wit, on the 26th day of January, 1837, at Jersey City aforesaid, upon an investigation then and there had, a committee of the board of directors of the plaintiff into the accounts and transactions of the said A. B., as such cashier as aforesaid, and upon an accounting and settlement then and there had by and between him, the said A. B., as such cashier as aforesaid, and the plaintiff, the said defalcation of the said A. B., as such cashier as aforesaid, was found to be, and by the said settlement was then and there liquidated, settled, and stated at $121,229.47.

And the plaintiff avers, that afterwards, to wit, on the day and year last aforesaid, at Jersey City aforesaid, in partial reparation and satisfaction of such defalcation of the said A. B., he, the said A. B., paid to the plaintiff the sum of $3000, and gave up and conveyed to the said company certain lands and

real estate situate in this state, of the value, as then and there settled and estimated. by and between the said A. B. and the plaintiff, of $80,000 : and, in further satisfaction of such defalcation the plaintiffs then and there, with the consent and approbation of the said defendant, administratrix as aforesaid, accounted and took the said bond in the said declaration mentioned at $10,000, the amount of the penalty thereof, and gave the said A. B. credit on his said defalcation to that amount therefor. And for the balance of the said A. B.'s said defalcation, to wit, the sum of $28,229.47, as liquidated and stated in the accounting and settlement aforesaid, he, the said A. B., afterwards, to wit, on the first day of February, 1837, to wit, at Jersey City aforesaid, made and delivered to the plaintiff his promissory note for the sum last before mentioned, bearing date the day and year last aforesaid, and payable to the order of the cashier of the plaintiff five years after the date thereof, without this, that the said A. B. made and executed the said supposed promissory note, in the said fourth plea in that behalf alleged, in full satisfaction and discharge of all and any money and securities unpaid or unaccounted for by the said A. B. to the plaintiff while he was retained and employed by the plaintiff or under authority, or in full of all damages or loss sustained by it by reason of any breach of the condition of the said bond, in manner and form as the said defendant hath above, in her said fourth plea in that behalf, alleged ; and this the plaintiff is ready to verify ; wherefore, &c.

To this replication the defendant also demurred, and assigned the following causes of demurrer, *viz :*

That the inducement in the said replication contained does not go to the same point as the special traverse, also contained therein ; and that the said inducement and traverse are not properly adapted to each other. And also, that the said traverse is imperfect and incomplete, and does not deny the material matters of defence contained in the defendant's plea, but merely traverses the averment, that the promissory note mentioned in the said plea was made and executed in full satisfaction and discharge of all and any money or securities unpaid or unaccounted for by the said A. B. to the said plaintiff, while

he was retained and employed by the plaintiff, or under authority, or in full of all damages or loss sustained by reason of any breach of the condition of the said bond, without in any wise traversing the acceptance of the said note by the said plaintiff, as in the said plea averred. And also, that the said replication is in other respects uncertain, informal, and insufficient.

The demurrers were argued before Justices CARPENTER and RANDOLPH, by *Vroom*, for defendant, and by *F. T. Frelinghuysen* and *Bradley*, for plaintiff.

CARPENTER, J., delivered the opinion of the court.

The second plea is *non damnificatus*, in the nature of a plea of performance: that the cashier, named in the condition of the bond, did well and faithfully serve the company, and that the said company did not suffer any loss by reason of any malfeasance, wilful neglect, or wrongful act of the said cashier. The plaintiff, in the replication to this plea, has undertaken to show how the company has been damnified by the wrongful acts of this officer. It is objected that the replication is too general, and that the breach of the condition is not sufficiently assigned. Such pleading has, however, been frequently sustained.

It is a rule of pleading, that when a subject comprehends multiplicity of matter, then, in order to avoid prolixity, the law allows of general pleading, as a bond to return all writs, &c. *Buller, J.,* 1 *T. R.* 753 ; *Steph. Pl.* 355 (359 1st ed.) ; 1 *Saund.* 411, *note* 4.

Thus in debt on bond, the condition of which was that the agent of the regiment would duly pay over such sums of money as he should receive from the paymaster general for the use of the regiment, *non damnificatus* being pleaded, the replication was, that the defendant received from the paymaster general, for and on account of the said regiment, *several sums of money, amounting in the whole* to £1400, which he had not paid over. On demurrer, it was held that the breach was sufficiently assigned, and that it was not necessary to set out the several days and times and circumstances, and thereby

Morris Canal and Banking Co. v. Van Vorst.

render the record prolix to no purpose.   *Cornwallis* v. *Savery*, 2 *Burr.* 772.

So in debt on bond conditioned that R. S. would render and pay to the plaintiff a true and just account of all moneys, bills, &c., which he should receive as his agent, to a plea of performance, replication that R. S. received *divers sums of money, amounting to £2000*, belonging to the plaintiff's business as agent, and had not rendered and paid, &c., was held to be sufficiently certain.   *Shum* v. *Farrington*, 1 *B. & P.* 640.

So in debt on bond conditioned that B. R. should account for and pay over to the plaintiffs, as treasurers of a charity, such voluntary contributions as he should collect for the use of the society, a like general assignment of the breach in the replication was, on special demurrer, held to be sufficiently certain. *Barton* v. *Webb*, 8 *T. R.* 459.

It may be proper to say, that in the case last cited a point was taken similar to one made by counsel in the present case.   It was said that the defendants, executors of the surety, were strangers to the transaction, and had no means of knowing, from so vague a charge, what they were called upon to answer.   But it was held, as must be very clear upon the slightest reflection, that the rule of law is the same as to all defendants; that the form of the pleading is the same, whether the suit is brought against the principal of the bond or against the surety, or against the executors of a surety.   Greater certainty is not required in the one case than in the other.

So in debt on bond of deputy sheriff, when the plaintiff, in his replication to the plea of general performance, assigned for breach of the condition that the defendant had collected moneys, as under sheriff, to the amount of $1000, which he refused to account for or to pay, this was held sufficient.   *Hughes* v. *Smith and Miller*, 5 *John.* 173.   See *S. P. Calvert* v. *Gordon*, 7 *B. & C.* 809.   See also 1 *Lev.* 94, *cit. Com. Dig. Plead.* (c. 45.)

But it was hardly necessary to cite cases.   As said in one case, unless such assignment were permitted, the whole benefit of the statute, by which a plaintiff is permitted to assign several breaches in his replication, would be done away, and it would be necessary in most cases to file a bill in equity before

he could assign his breaches with sufficient certainty. Indeed it was admitted on the argument, that in suits on bonds, by which money collected was secured to be paid over, such general assignment had been held sufficient. It was attempted to distinguish those cases from the present; but the reason equally applies. This case is that of the bond of the cashier of a large money institution, who for several years received and disbursed its funds, and it would be equally impossible to specify what securities for money he had received and misapplied, as to specify what sums of money he had received, and from whom. Such pleading would be utterly impossible, and, if required, would be fatal to all attempts to prosecute upon those bonds. To attempt, then, to specify the securities, and from whom received, would be to state in pleading that which is more properly matter of evidence, and would be a greater particularity than, in this case, the nature of the duty and of the default will conveniently allow. Principle and authority seem equally to be against the distinction contended for.

To some extent the same rule applies here as in covenant, where it has been held, that when matter lies generally within the knowledge of the covenantor, then a general allegation is sufficient. Thus in *Gale* v. *Reed*, 8 *East* 85, where some of the decisions cited were recognised, the covenant by a person relinquishing the business was not to carry on the business of a rope maker, except on government contracts, and not to employ any other person to make cordage, &c., it was held that a breach for having made cordage for *divers persons,* other than for the government, and for employing *other persons* than the plaintiffs, was well assigned.

Another case of demurrer, specially assigned, is that notice of the default by the cashier is not alleged to have been given to the surety in his lifetime, or to his administratrix since his death. It was admitted that the precedents are both ways, and the allegation being merely formal is obviously unnecessary. It has been before held in this case that notice of the default was not necessary to charge the sureties. 1 *Zab.* 100, 116, &c.

The breach of the condition is sufficiently assigned by the plaintiff, and the replication is sufficient.

The defendant has also demurred specially to the replication to the fourth plea. The plea is, that the cashier made and executed his promissory note, payable to the company, five years after date, in full satisfaction and discharge of all moneys and securities unaccounted for, &c. ; which said note, so made and delivered as aforesaid, the said company accepted and received in full satisfaction, &c. In the replication to this plea, the plaintiff, by way of inducement and in order to show that the note was not given and received in full satisfaction and discharge of the damages sustained by reason of the breach of the condition of the bond, avers that a settlement had been made by and between the company and the cashier ; that the defalcation of the cashier was found, and admitted to amount to the sum of $121,229.47 ; that, in partial satisfaction of this defalcation, the cashier paid to the company in cash the sum of $3000, and in land, by a transfer of real estate, the sum of $80,000 ; that in further satisfaction of the said damages, with the consent and approbation of the defendant, this bond was taken at $10,000, the amount of the penalty, and that the note of the cashier for $28,229.47 was taken in full satisfaction of the balance. The plaintiff then adds this traverse : without this, that the said cashier made and executed the said supposed promissory note in full satisfaction and discharge, &c.

It is said, on the part of the defendant, that the inducement to a special traverse, in order to be sufficient, must set up material facts repugnant to the allegation intended to be denied ; that it must lead to and support the traverse, which must properly be an inference from or a consequence of the inducement. *Gould Pl. ch. VII. secs.* 14, 55, 64, *p.* 382, &c. It is urged that upon these principles the inducement is not sufficient.

Undoubtedly the inducement to a special traverse must set up material facts repugnant to the allegation traversed ; but in our judgment such facts are here averred. The affirmative introductory matter in the pleading of the plaintiff, set out as the foundation of the traverse, seems to us to be material, and it is obviously inconsistent with what had been previously alleged by the defendant. If the facts thus averred by way of inducement be true in point of fact, most clearly the note in question

was never given in full satisfaction and discharge of the damages which the company had sustained by reason of the breach of the condition of the bond.

It is not necessary, in answer to what has been said by the counsel of the defendant, to enlarge upon the character and object of a special traverse. It is sufficient for the present to say that this form of denial seems to have been properly adopted on the present occasion. It was proper, by putting the denial of what had been set up in the plea in this qualified form, stating the circumstances of the transaction in an inducement, to give the adverse party an opportunity to raise an issue at law for the adjudication of the court. It furnished him with an opportunity, if he saw fit to embrace it, to question the validity of the transaction or to test its legal effect, upon which however, no point has been made. This mode of traverse has been moulded into a technical form, but, as was well observed by counsel, in substance it arises out of the very nature of things, and is to be found in some shape in every system of pleading. The party who resorts to such mode of pleading sets up his own statement of opposing facts, thus argumentatively denying the truth of what has been alleged by the adverse party, which he then follows by the direct denial necessary to form an issue, the denial being thus the direct result of the preceding statement. Here the plaintiff, after a statement of the circumstances under which, as he alleges, the note had been given, then in direct and formal terms denies that it had been made and executed for the purpose alleged by the defendant.

But again it is urged that the traverse itself is insufficient. It traverses that the note was made and executed, and not that it was accepted and received in satisfaction. The making and executing the note in satisfaction is averred in substance, if not in terms, by the defendant, and a traverse may be well taken to what, though not expressly alleged, is necessarily implied. *Steph. Pl.* 195 (218, 1*st ed.*) If delivered for one purpose, could the note have been accepted for any other? If anything is given, it must be accepted as intended or declared by the giver.

It is settled that the replication to the plea of accord and satisfaction may either deny the delivery of the thing in satisfaction or it may deny the acceptance, or indeed, as it would seem, the plaintiff may take issue on the entire allegation. " *Quod non dedit in satisfactione*," is a good replication, for there must be a mutual payment and acceptance in satisfaction, and the one imports both.    *Com. Dig. Accord (c)*.

In *Young* v. *Rudd*, 5 *Mod.* 86, to *indebitatus assumpsit* on a *quantum meruit*, the defendant pleaded in bar that he gave the plaintiff a beaver hat, which he accepted in satisfaction of the debt.    The plaintiff traversed, that he accepted it in satisfaction ; and upon demurrer it was objected in behalf of the defendant, that it was an immaterial traverse, because the giving was the directing matter which ought to have been traversed.    To which the answer was, and so the court held, that either the giving or the acceptance of what was given in satisfaction might be traversed.    In *Webb* v. *Weatherby*, 1 *Bing. N. Cas.* 502, where the above case was cited as authority by the court, it was held that the receipt in satisfaction implied payment in satisfaction, and that the plaintiff might take issue on the entire allegation. It was contended in this case, as payment and acceptance were both material allegations, that the plaintiff ought to elect on which of them he would tender issue.    The same principles were again recognised in *Ridley* v. *Tindall*, 7 *Ad. & Ell.* 134. The precedents in 3 *Chit. P.* 1156, 1 *Lil. Ent.* 105, &c., are in accordance.

This replication is also sufficient, and both demurrers must be overruled.

RANDOLPH, J., concurred.

Demurrers overruled.